UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF MICHIGAN, | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) CIVIL NO. 2:12 MC 39 ) |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, a Michigan nonprofit healthcare corporation, | ) ) ) ) |
| Defendant | ) |

OPINION AND ORDER

This matter is before the court on the Motion to Compel Response to Subpoena for Documents [DE 1], filed by the defendant, Blue Cross Blue Shield of Michigan, on May 11, 2012. For the reasons set forth below, the motion is **DENIED.**

Background

The defendant, Blue Cross Blue Shield of Michigan, is a charitable institution designated as Michigan's insurer of last resort. As such, Blue Cross is required to provide "reasonable access to, and reasonable cost and quality of health care services." Mich Comp. Laws §550.1102(1). Blue Cross contracts with hospitals in Michigan to provide health care for its members. Some contracts between Blue Cross and Michigan hospitals include a "most favored nation" (MFN) clause, which provides that hospi-

tals will give Blue Cross at least as favorable of a discount as commercial insurers.

On October 10, 2010, the United States Department of Justice and the State of Michigan filed an antitrust action against Blue Cross, challenging its use of MFNs in certain contracts with Michigan hospitals and seeking to enjoin Blue Cross' use of MFNs. Blue Cross also has four private antitrust cases pending against it in the Eastern District of Michigan.

In the antitrust cases, the plaintiffs contend that the MFNs are anticompetitive under Section 1 of the Sherman Act and parallel state law.  To succeed, the plaintiffs must prove "that the purportedly unlawful contract, combination or conspiracy produced adverse anticompetitive effects within relevant product and geographic markets."  The Department of Justice and State of Michigan allege that Blue Cross' MFNs produced adverse anti-competitive effects in 17 separate geographic markets and two product markets, resulting in competitors being excluded from those markets.  The plaintiffs identified the 17 geographic markets as the areas where the employers offering group health insurance and the individuals purchasing individual health insurance work and live.  Blue Cross challenges the market definition in defense of the antitrust claims, arguing that the identified markets do not reflect market realities.  To challenge

the market definitions, Blue Cross expects that discovery will show that hospitals outside of the alleged geographic markets compete with the identified markets, including some markets outside the state of Michigan.  The plaintiffs acknowledge that Michigan residents travel across state lines to receive health care.

To help prove its defense, Blue Cross issued non-party subpoenas to various hospitals, including St. Catherine Hospital in East Chicago, Indiana.  St. Catherine is part of the Community Healthcare System that is comprised of three hospitals in Lake County, Indiana.  East Chicago, where St. Catherine is located, has been designated as an Medically Underserved Area.  Because of this, St. Catherine has been designated as a disproportionate share hospital by the federal and state government.  Disproportionate share hospitals receive additional financial support from the federal and state government to serve the high volume of low-income patients.  St. Catherine is one of eight hospitals that receives additional financial support from the state.  St. Catherine receives 45.5% of its income from Medicare, 27.9% from Medicaid, 23.1% from commercial payors, and 3.6% from individuals who self-pay.  St. Catherine does not contract with Blue Cross.

Blue Cross argues that St. Catherine's proximity to south-western Michigan (50 miles) renders the documents relevant to

determining the appropriate product and geographic markets. St. Catherine has refused to produce the documents sought in Blue Cross' subpoena, arguing that the documents are irrelevant, overly broad, unduly burdensome, and seek privileged, proprietary, or confidential information. Blue Cross filed a motion to compel on May 11, 2012, seeking production of the documents requested in its subpoena.

## Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)(*quoting* *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Borom v. Town of Merrillville*, 2009

WL 1617085, *1 (N.D. Ind. June 8, 2009) (*citing* **Sanyo Laser Prods., Inc. v. Arista Records, Inc.**, 214 F.R.D. 496, 502 (S.D. Ind. 2003)). *See also* **Adams v. Target**, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001)("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); **Shapo v. Engle**, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses.  Federal Rule of Civil Procedure 37(a)(2)-(3).  The burden "rests upon the objecting party to show why a particular discovery request is improper." **Gregg v. Local 305 IBEW**, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(*citing* **Kodish v. Oakbrook Terrace Fire Protection Dist.**, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); **McGrath v. Everest Nat. Ins. Co.**, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal citations omitted); **Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services**, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009)(internal citations omitted).  The objecting party must show with specificity that the request is improper. **Cunningham v. Smithkline Beecham**, 255 F.R.D. 474, 478 (N.D. Ind. 2009)(*citing* **Graham v. Casey's General Stores**, 206 F.R.D. 253, 254 (S.D. Ind. 2002)).  That burden cannot be met by "a reflexive

invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham,* 255 F.R.D. at 478 (*citing Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006))(internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(*examining Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002))(internal quotations and citations omitted). *See also*, *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012)(explaining that the district court has broad discretion in supervising discovery).

St. Catherine first objects to the discovery as irrelevant to Blue Cross' antitrust litigation. Blue Cross seeks documents pertaining to St. Catherine's managed care contracting, communications with healthcare payors and pricing including St. Catherine's chargemaster, and documents pertaining to pricing, reimbursement, and competition to show that hospitals located outside

6

the geographic market compete with the same markets.  St. Catherine argues that Blue Cross cannot liken a hospital whose payors are mostly commercial to a safety-net hospital such as St. Catherine that serves such a high percentage of Medicaid patients.  St. Catherine explains that Blue Cross should seek information from hospitals that are destination hospitals, primarily treating patients with commercial policies.

The Department of Justice and State of Michigan's complaint against Blue Cross alleges that "individuals who are not disabled, elderly, or indigent, and therefore eligible for Medicare or Medicaid, typically obtain health insurance from commercial health insurance companies."  St. Catherine's patients primarily are disabled, elderly, or indigent, and eligible for Medicare or Medicaid.  Because of this, St. Catherine does not contract with Blue Cross and is not in the business of negotiating or maintaining commercial contracts primarily, and therefore, would not be an appropriate hospital for market comparison.  St. Catherine believes that any information it would turn over would not be relevant because, given the make up of its patients, it could not help define the appropriate markets.

The relevant market is a factual inquiry determined by the commercial realities faced by consumers.  ***FTC v. Tenet Health Care Corp.***, 186 F.3d 1045, 1053 (8th Cir. 1999).  The court makes

this determination by considering the hospital's primary and secondary service areas, where the patients reside, and plans and strategies in competing for patients. See *Republic Tobacco v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 738 (7th Cir. 2004); *FTC*, 186 F.3d at 1053. The proper geographical market includes the area where patients go and feasibly could go for care. *Republic Tobacco,* 381 F.3d at 738.

Similarly, to show the proper product market, the court must analyze how "consumers will shift from one product to the other in response to changes in their relative costs." *HDC Medical, Inc. v. Minntech Corp.*, 474 F.3d 543, 547 (8th Cir. 2007). To succeed, there must be economic evidence of the state of competition. *HDC Medical*, 474 F.3d at 547. Blue Cross argues that documents reflecting the sustainability of healthcare payors are relevant to whether the alleged product markets are in fact more differentiated than the antitrust plaintiffs contend.

St. Catherine does not deny that it provides care to Michigan residents or that some of its revenue comes from commercial providers such as Blue Cross. In fact, 23.1% of its revenue is derived from commercial payors. This may be relevant to determine that the market expands beyond that defined by the Department of Justice. Although the amount of relevant information may be limited, it is undisputed that St. Catherine has documents

pertaining to care provided to Michigan residents and income received from commercial suppliers, such as Blue Cross, which may be relevant to determine the appropriate markets. St. Catherine has not demonstrated that it does not hold *any* relevant information.

St. Catherine next complains that discovery would be unduly burdensome. St. Catherine estimated that it will take three weeks to review and compile all hard copies requested by Blue Cross, amounting to 120 hours of time. In addition to this, Community Healthcare System's Vice-President would have to review the documents, electronic information would need to be compiled, and St. Catherine would need time for attorney review. Because St. Catherine is a safety-net hospital, it is under significant financial strain, and the additional time and cost would impose a financial burden.

Parties to a suit must accept the burden accompanying litigation. *Charles v. Quality Carriers, Inc.*, 2010 WL 396356, *1 (S.D. Ind. Jan. 28, 2010). However, "[i]n the context of third party discovery, courts should be especially careful in protecting the parties from excessive or oppressive discovery." *Moore v. PlasmaCare, Inc.*, 2012 WL 602623, *2 (S.D. Ind. Feb. 23, 2012). See also *Charles*, 2010 WL 396356 at *1. "Non-parties have a different set of expectations. Accordingly, concern for

9

the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." **Charles**, 2010 WL 396356 at *1 (*quoting* **Cusumano v. Microsoft Corp.**, 162 F.3d 708, 717 (1st Cir. 1998)).  When determining whether to enforce a discovery request, the court must weigh the need for the information, the breadth of the request, the time period the discovery covers, the particularity of the documents, and the burden imposed.  **Charles**, 2010 WL 396356 at *1.  "[R]elevance alone may not be enough to justify a subpoena, particularly given that the undue burden calculus is more protective of non-parties than it is for parties." **Charles**, 2010 WL 396356 at *1.

Blue Cross argues that the burden is minimal because it has agreed to limit the scope of its discovery requests and has proposed to have its own attorneys search for the non-privileged responsive documents.  Regardless, St. Catherine still would experience a burden on its limited resources by allocating employees to review the documents and would incur costs to produce the documents.  Although St. Catherine may have some relevant documents, it does not appear that the amount of relevant information is proportionate to the perceived burden.  St. Catherine's patient base predominately consists of individuals receiving public assistance.  Less than a quarter of its revenues come from private payors, and only a portion of that would come

from those insured by Blue Cross and Michigan residents with private insurance. This is particularly true because St. Catherine does not contract with Blue Cross.

St. Catherine would need to sift through myriads of documents to find the limited number of papers that pertain to Blue Cross' defense. This is further complicated by the fact that St. Catherine is part of a larger hospital system. The records for the three hospitals within this system are combined, providing a larger database to search. St. Catherine represents that it would be impossible to separate and distinguish what information relates to St. Catherine from that relating to the two other hospitals in the system. Requiring discovery would result in the production of information that belongs to two hospitals not subject to the subpoena. Because these hospitals may be outside the target market and their information is not sought, the inability to distinguish which documents were derived from which hospital would cloud Blue Cross' analysis and make the documents irrelevant to their defense.

Blue Cross argues that the commercial payors with whom St. Catherine contracts compete with Blue Cross, rendering the economic information relevant to Blue Cross' defense, and that the limitations to which it has agreed would result in nothing more than a minimal inconvenience for St. Catherine. Although

some documents may be relevant, it is not clear that the probative value of the limited number of relevant documents exceeds the burden St. Catherine would incur.  Given St. Catherine's patient make-up, it is unlikely that St. Catherine treats a large number of Michigan residents paying with private insurance to warrant the search necessary to find the relevant documents. Additionally, St. Catherine does not contract with Blue Cross, rendering it unclear whether Blue Cross truly competes for this market.  The limitations Blue Cross proposes do not overcome the lack of information St. Catherine may possess and do not negate that St. Catherine would need to allocate some of its limited resources to sifting through documents.

   Blue Cross has not agreed to absorb all of the expense, and St. Catherine has demonstrated that it has severe financial restraints and limited resources to allocate towards conducting discovery.  Because it is not clear that Blue Cross competes for this market due to St. Catherine's revenue resulting primarily from government assistance, there are a limited number of Michigan residents who are patients, and because St. Catherine does not contract with Blue Cross, the limited relevant information that may be revealed is outweighed by the time and expense it would impose on St. Catherine to sift through all of the docu-

ments within its hospital system.  The court finds this request overly burdensome.

_____

Based on the foregoing, the Motion to Compel Response to Subpoena for Documents [DE 1] filed by the defendant, Blue Cross Blue Shield of Michigan, on May 11, 2012, is **DENIED**.

ENTERED this 15th day of August, 2012

                                     s/ ANDREW P. RODOVICH
                                             United States Magistrate Judge